# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5238-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

O.P.,

     Defendant-Appellant,

and

S.L.C.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF U.F.P.,

     a Minor.

_____

Submitted September 23, 2019 – Decided October 3, 2019

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0025-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Howard B. Tat, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Shuster, Assistant Attorney General, of counsel; Fatime Meka, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

Defendant O.P. (Oscar)[1] appeals from a June 27, 2018 judgment terminating his parental rights to his daughter, U.F.P. (Una), then age two. After a one-day trial, Judge Nora J. Grimbergen terminated Oscar's parental rights for the reasons expressed in her detailed written opinion. The judge concluded the Division of Child Protection and Permanency (the Division) had satisfied all four prongs of the best interest of the child test found in N.J.S.A. 30:4C-15.1(a). We affirm.

On appeal, Oscar raises the following points:

---

[1] We use initials and fictitious names for the sake of anonymity.

I. THE TRIAL COURT'S DECISION MUST BE REVERSED AS THE RECORD LACKS SUBSTANTIAL, CREDIBLE EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS UNDER PRONGS ONE THROUGH THREE OF N.J.S.A. 30:4C-15(a) AS IT ONLY MADE ONE FINDING AGAINST THE FATHER.

> A. The trial court erred when it found that the Father had harmed Una by failing to complete a psychosexual evaluation.

> B. The trial court erred when it found the Father did not correct the harm facing Una as he was never given a meaningful opportunity to do so.

> C. The trial court erred when it found the Division had provided reasonable services to the Father as it failed to provide any alternative to a psychosexual evaluation.

II. THE TRIAL COURT ERRED IN FINDING THE DIVISION HAD PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT THE TERMINATION OF THE FATHER'S PARENTAL RIGHTS WOULD NOT DO MORE HARM THAN GOOD FOR THE DAUGHTER.

These alleged errors merit limited discussion. R. 2:11-3(e)(1)(E).

We summarize the dispositive facts. On August 3, 2015, S.L.C. (Sally) gave birth to Una. The Division had received three referrals about Sally while she was pregnant with Una, referencing her drug use, incarcerations, hospitalizations, and homelessness.

A-5238-17T1

The Division had previous involvement with Sally dating back to 2004, with respect to her two older children. Her parental rights to those children were terminated in October 2012. We affirmed the termination. N.J. Div. of Child Prot. & Perm. v. S.C., No. A-1222-12 (App. Div. Nov. 14, 2013).

Upon Una's birth, the Division received another referral. Both mother and child had tested positive for opiates and methadone, and Una had begun treatment for symptoms of withdrawal. At that time, the Division substantiated Sally for neglect and posing a substantial risk of injury to Una.

Una remained hospitalized for about six weeks. During that time, the Division filed a complaint for custody, which the court granted, noting concerns over Sally's drug use and Oscar's criminal history, which included a conviction for sexual assault. On September 18, 2015, Una was discharged from the hospital and placed in a non-relative resource home.

The Division provided services to the family, including engaging in case planning and developing family agreements. The Division provided Sally with a substance abuse evaluation and treatment, a psychological evaluation, parenting skills training, and visitation. In December 2015, Sally was enrolled in a Mommy & Me program, where Una was placed in her custody on February 1, 2016, with the Division retaining care and supervision.

4

In June 2016, Sally was discharged from the Mommy & Me program, without having successfully completed it. After her discharge, she relapsed into drug use and was unable to maintain stable housing, despite assistance from the Division. In October 2016, the Division effectuated an emergency removal of Una and filed an amended complaint for custody, and the court approved the removal. Una was placed in her previous resource home. After the second removal, Sally did not remain in contact with the Division, and the Division was unable to locate her. In July 2017, the Division learned that Sally was being held in the Essex County Jail. Five days earlier, the court had entered a permanency order, approving the Division's plan for Una's adoption. The following month, the Division filed a complaint for guardianship

The Division provided Sally with visitation during her remaining incarceration. However, after her release in late-December 2017, she did not remain in contact with the Division. In March 2018, Sally contacted the Division from the hospital, where she remained for a number of weeks receiving treatment for a blood infection. She had no further contact with the Division after she was discharged from the hospital, and did not attend a scheduled psychological evaluation. Sally did not appear for trial and she has not appealed from the termination of her parental rights.

A-5238-17T1

With respect to Oscar, the Division's concerns were his history of substance abuse and his extensive criminal history, which included a conviction for sexual assault. He is a registered sex offender, and pursuant to N.J.S.A. 9:2-4.1(a), he "shall not be awarded the custody of or visitation rights to any minor child . . . except upon a showing by clear and convincing evidence that it is in the best interest of the child for custody or visitation rights to be awarded."

The Division referred Oscar for a psychosexual evaluation on multiple occasions, explaining the evaluation was necessary to determine whether he should be granted visitation or be considered for placement of Una. The Division offered transportation assistance to the evaluation, which was rescheduled at least six times. Oscar never attended any of the scheduled appointments, and he denied there was any need for the evaluation. As a result of his refusal, the court did not grant Oscar visitation with Una. He has not visited with Una since she was discharged from the hospital as an infant.

Oscar was largely uncooperative with the Division, except for complying with a substance abuse evaluation and outpatient drug treatment. He maintained only sporadic contact with the assigned caseworker. For example, he went missing after being discharged from a hospital and a rehabilitation facility. When the Division reestablished contact with him in March 2017 he was living

with his brother in an abandoned building. Even then, he did not participate in services and the caseworker had difficulty reaching him. Oscar attended a court hearing in July 2017 but removed himself from the courtroom during the hearing and did not contact the Division during the following three months.

The Division filed a complaint for guardianship of Una on August 22, 2017. When Oscar was served with the complaint in October 2017 he insisted he could care for Una, or she could live with a relative. Thereafter, the Division did not hear from Oscar until March 1, 2018, when he said he had been receiving the caseworker's mail and communicating with his counsel. Oscar terminated the phone call when the caseworker asked for his current address. He did not attend any of the guardianship hearings or trial.

The Division considered placement of Una with individuals offered by Oscar and Sally, including: K.C., a family friend; Ms. M., a paternal aunt; a maternal aunt; and L.W., a paternal relative. The Division ruled out K.C. because she did not provide requested information to the Division. The Division ruled out Ms. M. because she did not respond to the Division's inquiries. The maternal aunt withdrew herself from consideration because she was not available to care for Una. The Division ruled out L.W. because, after saying he

needed to discuss the matter with his wife, he never followed up with the Division.

At the time of trial, the Division's plan was for Una to remain in her resource home and be adopted by her resource parent, notwithstanding the resource parent's recent wavering on the subject of adoption. In March 2019 the Division advised this court that Una was placed in a different adoptive home.

The Division and the Law Guardian argue the Division has met its evidentiary burden that termination of Oscar's parental rights was in Una's best interests and urges this court to affirm the trial court's decision, offering Una the chance for permanency that she deserves by freeing her for adoption.

Under N.J.S.A. 30:4C-15.1(a), the Division

> shall initiate a petition to terminate parental rights on the grounds of the "best interests of the child" . . . if the following standards are met:
>
> (1)   The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2)   The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3)    The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4)    Termination of parental rights will not do more harm than good.

"The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests."  In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999).

When parents contest the termination of their rights, the court's function is to decide whether they can raise the child without causing further harm.  In re Guardianship of J.C., 129 N.J. 1, 10 (1992).  "The burden falls on the State to demonstrate by clear and convincing evidence that the natural parent has not cured the initial cause of harm and will continue to cause serious and lasting harm to the child."  Ibid.

The judge found the Division proved all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.  We limit our discussion to the court's findings as to Oscar.

9

As to prong one, the judge found Oscar was referred for a psychosexual evaluation that he failed to undergo despite the evaluations being rescheduled numerous times during the pendency of the case. The judge noted:

> Had he attended any of these evaluations, the Division might have determined him to be able to safely parent [Una]. [Oscar] never visited with [Una] after she was discharged from the hospital and did not comply with the one service that might have permitted him to visit.
>
> His lack of compliance with the psychosexual evaluation prevents him from safely parenting [Una], thus placing her safety, health and development at substantial risk of harm. His failure to provide the necessary nurturing in and of itself is a harm to [Una]. Based on the evidence, [Oscar's] lack of compliance suggests he is not viable as a parenting option. He has demonstrated a lack of commitment to [Una].

The court determined that Una's safety, health, or development had been or would continue to be endangered by the parental relationship with Oscar, who by failing to complete the necessary evaluation had effectively withdrawn his solicitude, nurture, and love for an extended period of time.

Similarly, the court found that prong two had been established because Oscar "consistently refused to participate in the one service which might have permitted him to visit [Una] and perhaps be determined as a safe parenting option for her." Moreover, his lack of contact with the Division for almost eight months displayed an unwillingness to eliminate the harm that endangers Una.

A-5238-17T1

With respect to prong three, the court found the Division "provided services including substance abuse evaluations and treatment, family team meetings, transportation, psychological and psychosexual evaluation . . . to assist [Oscar] in becoming a parenting option for [Una]." The judge found the caseworker "was dedicated in her attempts to engage" Oscar in the litigation and services but he "chose not to avail himself of those services or participate in any court hearings in the guardianship litigation regarding his daughter." The judge also found the Division had explored alternatives to the termination of parental rights, but to no avail. The judge concluded "[t]he efforts directed at this family were tailored to the needs of the parents," but "[b]oth parents have failed to comply with those services."

Finally, as to prong four, the judge found the evidence showed "neither parent is committed to [Una]," as neither parent had completed services. Due to Oscar's sexual assault conviction, he had the burden "to show that it is in the child's best interest to allow visitation. He failed to attend any of at least six psychosexual evaluations scheduled by the Division to give him the opportunity to show he can safely parent." In addition, Oscar had not been in contact with the Division for months, and Una was well-cared for by her resource parent,

11

who was committed to adoption, "thus providing her with the permanency she deserves."

Our review of a trial court's decision in a guardianship action is limited and deferential. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278 (2007). We do not disturb the judge's findings so long as they are supported by substantial credible evidence in the record. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to the judge's evaluation of the credibility of witnesses, including experts, and to the acknowledged expertise of Family Part judges in these matters. Id. at 552-53.

Applying that standard, we conclude the record contains substantial credible evidence supporting the trial judge's findings and conclusions. We discern no basis to disturb them. We affirm substantially for the reasons expressed by Judge Grimbergen in her comprehensive written opinion. We add the following comments.

Under N.J.S.A. 9:2-4.1, the burden of proof is on the parent seeking visitation or custody to show by clear and convincing evidence that it is in the child's best interest for custody or visitation rights to be awarded. Oscar, who did not cooperate with the Division, refused to undergo a psychosexual evaluation, did not present any expert testimony, and failed to attend the trial,

has not met that burden. He presented no evidence, much less clear and convincing evidence, that it was in Una's best interest to award him custody or visitation. Moreover, in continually refusing to participate in a psychosexual evaluation, by his own conduct he deprived the court of necessary information, caused the absence of visitation with Una and contributed to his failure to develop a relationship with her. Our Supreme Court has stressed that "the attention and concern of a caring family" is "the most precious of all resources." N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 613 (1986). "A parent's withdrawal of that solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999) (citing K.H.O., 161 N.J. at 352-54).

Based upon this failure, as well as Oscar's more general failure to maintain contact with the Division and present a viable plan for his daughter, the judge correctly determined that all four prongs of N.J.S.A. 30:4C-15.1(a) had been established by clear and convincing evidence. By refusing to engage in a psychosexual evaluation, defendant has absented himself from his daughter's life, evidencing his unfitness as a parent, and making the termination of his parental rights in Una's best interests, so she can achieve permanency with

another family. <u>D.M.H.</u>, 161 N.J. at 378-94. <u>See also</u> <u>A.W.</u>, 103 N.J. at 610 (noting that Division's efforts may be affected by parents who refuse to engage in services).

Ordinarily, the Division should offer testimony of an expert who performs a bonding evaluation. <u>N.J. Div. of Youth & Family Servs. v. F.M.</u>, 211 N.J. 420, 453 (2012); <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 N.J. 261, 281 (2007). However, where the termination is not predicated upon bonding, but rather reflects the child's need for permanency and the biological parent's inability to care for the child in the foreseeable future, a lack of a bonding evaluation is not fatal to the Division's case. <u>N.J. Div. of Youth & Family Servs. v. B.G.S.</u>, 291 N.J. Super. 582, 593 (App. Div. 1996). Here, the termination was predicated upon parental unfitness, not the child's relative bonding with the biological parents versus the resource parent. Una, who is now four years old, has not seen Oscar since she was a newborn infant. By any measure, there is no bond between them.

For the same reason, Una's post-judgment change of placement does not change the result. While Una has been moved to another resource home, which the Division characterizes as an "adoptive home," nothing has changed with respect to Oscar's ability or willingness to provide his daughter with a safe and

14

stable home. Thus, notwithstanding the change in placement, termination of parental rights still offers Una her best chance for permanency, and would not do more harm than good.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5238-17T1